IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| DONNA THURGOOD SOLOMON,<br><br>                  Plaintiff,<br><br>vs.<br><br>PIONEER ADULT REHABILITATION CENTER,<br>                  Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  1:04CV102 DAK |

This matter is before the court on (1) Defendant's Motion for Summary Judgment; (2) Plaintiff's Motion for Partial Summary Judgment; (3) Defendant's Motion to Strike Plaintiff's Purported Deposition Corrections; and (4) Defendant's Motion to Strike Affidavit of Laurie Hebert.  A hearing on the motions was held on July 16, 2007.   At the hearing, Plaintiff Donna Solomon ("Plaintiff" or "Ms. Solomon") was represented by April Hollingsworth and Jonathan Benson.  Defendant Pioneer Adult Rehabilitation Center ("PARC") was represented by Richard Bissell.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.   Since taking the motions under advisement, the court has further considered the law and facts relating to the motions.   Now being fully advised, the court renders the following Memorandum Decision and Order.

## I.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether a trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995).  In other words, there "must be evidence on which the jury could reasonably find for the plaintiff."  *Berry v. T-Mobile USA, Inc.* 490 F.3d 1211, 1216  (10th Cir. 2007);  *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995).  A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  Fed.R.Civ.P. 56c.  When applying this standard, a court must view the factual record in the light most favorable to the non-movant.  *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## II. FACTS

In this case, Ms. Solomon contends that her employer, PARC, violated the ADA and the Rehabilitation Act by failing to accommodate her disabilities.   She has also asserted a claim for equitable estoppel.

PARC is a division of the Davis County School District, and it provides training and employment opportunities for people with disabilities and works to provide employment opportunities for disabled individuals so that they may reach the highest level of social and economic independence.  PARC contracts with the federal government to provide these

employment opportunities and its work force provides services to divisions and agencies of the federal government, including the provision of custodial services to Hill Air Force Base.  The federal contract that provided the employment opportunity for the Plaintiff is governed by the Javits-Wagner-O'Day ("JWOD") Act, which provides funding for the contracts so long as at least 75% of the employer's work force is comprised of individuals who are "severely disabled."  Plaintiff qualified as disabled for JWOD purposes because when she applied for a job, she presented documentation of a closed-head-injury syndrome disability from an automobile accident approximately ten years prior to her hire.   The documentation was in the form of a settlement demand that had been drafted by her attorney after the accident.

     Plaintiff was hired by PARC in April 2002.  PARC was unaware that Plaintiff had an allegedly disabling heart condition until it received notification of her surgery, which occurred on October 18, 2002.   Plaintiff claims she had Wolfe-Parkinson White Syndrome, a condition in which her heart would suddenly race–up to 250 beats/minute.  PARC granted her time off for the surgery, which was an ablation procedure to eliminate the "accessory pathway" that was causing the heart to occasionally beat too fast.   She was in the hospital from October 18-24, 2002.   She then returned to work on November 18, 2002.

     When she returned to work, she provided a release from her doctor stating that she could return to work at her regular occupation with no restrictions.  Plaintiff did not ask for any accommodation after her surgery, except that she asked her immediate supervisor if she could bring her own vacuum and mop to work, and she asked if she and a co-worker could work together to get things done faster.

Beginning January 1, 2003, PARC implemented a new attendance policy in an effort to address high levels of employee absenteeism.  The newly implemented attendance policy provided for automatic termination if an employee exceeded 16 hours of leave without pay hours (LWOP) in a rolling 185-hour period.   PARC explained the new policy to all employees and explained that their immediate supervisors could not calculate their leave balances for them, but that they could simply fill out a form and submit the form to Human Resources ("HR").  The HR department would then inform them–usually within 24 hours–whether they could take their leave without pay.

Plaintiff signed a statement indicating that she had been advised of the new policy, although she wrote on the form "I disagree with this policy."   Plaintiff claims, however, that she was unaware that she could submit such a form to obtain her LWOP balance.   The bottom of every "Leave Request"  form (which Plaintiff was required to complete to take leave) states, "Compliance with PARC's SCA attendance policy is the sole responsibility of the employee.  Supervisor approval of vacation and/or leave without pay does not constitute authorization to use leave not available under PARC's vacation and/or attendance policy."

According to PARC, Plaintiff exceeded her allotment of LWOP and therefore violated this policy in April of 2003.  Specifically, Plaintiff allegedly had chest pains on Monday, March 31, 2003 and left work early.  She told her immediate supervisor, Laurie Hebert, that she believed her chest pains were life threatening and that her chest felt the way it did before the heart surgery she had undergone the previous October.  She called for an appointment with her cardiologist,

4

but could not get an appointment until Wednesday, April 2, 2003.[1]

Plaintiff asked to take the day off on April 2 for the cardiologist appointment, and Ms. Hebert approved her leave. Ms. Hebert had asked Plaintiff if she had enough LWOP left. Plaintiff thought she had sufficient LWOP hours left, but she asked Ms. Hebert to calculate the hours for her. Plaintiff did not submit a form to HR to verify her balance, as the policy required. Ms. Hebert did her best to calculate Plaintiff's balance, and she called Plaintiff to let her know that she had enough leave time. Unfortunately for Plaintiff, however, Ms. Hebert had incorrectly calculated her leave time, and Plaintiff had exceeded the permissible number of LWOP hours. Pursuant to PARC's policy, Plaintiff was automatically terminated on either April 3 or 4, 2003.

As a result of her termination, Plaintiff claims that PARC terminated her employment because of her heart condition and that PARC violated the ADA/Rehab Act for failing to engage in the interactive process and for failing to accommodate her claimed known disability by allowing her to go to her doctor appointment.

Plaintiff's purported disability has been somewhat of a moving target throughout this litigation. Plaintiff originally claimed in her Complaint that she had a "heart condition." The court granted Defendant's Motion to Dismiss in December 2004, finding, among other things,

---

[1] Although Plaintiff states that "[b]ecause she feared that her life might be as risk, she set up an appointment to see her cardiologist," Defendant has provided unrefuted evidence that Plaintiff knew, as of March 26, 2003, that she had an appointment with Dr. Callihan on April 2. On March 29, 2003, she faxed a medical release dated March 26, 2003, so that her medical records could be sent to Dr. Callihan for her April 2, 2003 appointment. See Ex. Q, attached to Defendant's Mem. in Supp. of Mot. for S. J. While this casts significant doubt on Plaintiff's credibility, in the context of this summary judgment motion in which the court cannot make credibility assessments, the court has not considered this discrepancy, which is irrelevant to the court's legal determinations below.

that Plaintiff was required to be more explicit about her disability. In her Amended Complaint, Plaintiff asserted that she had Mitral Valve Prolapse and Wolff-Parkinson White Syndrome. Plaintiff subsequently filed a Motion for Partial Summary Judgment. Defendant then filed a Rule 56(f) Motion, claiming that discovery was not complete, and the court granted the Rule 56(f) Motion.

After the close of discovery, Defendant filed its own Motion for Summary Judgment and an opposition to Plaintiff's Motion for Summary Judgment. Plaintiff, however, also filed a "Supplemental Memorandum in Support of Motion for Partial Summary Judgment," supplementing her previous Motion for Summary Judgment and claiming for the first time that Plaintiff's closed-head injury (which qualified her as "disabled" for JWOD purposes) prevented her from understanding the new attendance policy and that PARC had failed to accommodate her closed-head injury by not allowing her immediate supervisor to calculate her LWOP balance for her. Plaintiff also abandoned her claim that she was disabled based on Mitral Valve Prolapse.

## II.  MOTIONS FOR SUMMARY JUDGMENT

Defendant has argued many bases for granting summary judgment in its favor. Plaintiff, on the other hand, contends that disputed facts preclude summary judgment and that, instead, the court should grant partial summary judgment to Plaintiff for Defendant's failure to provide a reasonable accommodation for her heart condition.[2] While Plaintiff has created many disputed

---

[2] In her Reply Memorandum, Plaintiff concedes that "due to the nature of the discovery that surfaced after she filed her Motion for Partial Summary Judgment, it is unlikely that she will prevail on her Motion for Partial Summary Judgment based on her heart disability." Reply Mem. at ii. n.1. She contends, however, that she has created disputed facts that must go to jury. The court disagrees.

issues of material fact as to many of Defendant's arguments, several bases remain that compel granting summary judgment in favor of Defendant.

**A.     PLAINTIFF HAS FAILED TO CREATE A DISPUTED ISSUE AS TO WHETHER SHE IS DISABLED UNDER THE ADA AND/OR THE REHABILITATION ACT[3]**

*1.     Plaintiff Has Not Demonstrated That She Is Substantially Limited in a Major Life Activity*

"To establish a valid claim under the ADA, a plaintiff must first prove by a preponderance of the evidence that she has a disability.  To satisfy the ADA's definition of disability, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Holt v. Grand Lake Mental Health Ctr., Inc.,* 443 F.3d 762, 765 (10th Cir. 2006) "Whether the plaintiff has an impairment within the meaning of the ADA and whether the conduct affected is a major life activity for purposes of the ADA are questions of law for the court to decide.   Ascertaining whether the impairment substantially limits the major life activity is a question of fact for the jury, although a court is not precluded from deciding the issue on a motion for summary judgment." *Id.* at n. 1;  *Berry v. T-Mobile USA, Inc*. 490 F.3d 1211, 1216 (10th Cir. 2007).

First, assuming *arguendo* that Plaintiff is "impaired" under the ADA, she has failed to create a genuine issue of material fact as to whether her impairments substantially limit a major life activity.   Plaintiff must precisely identify a major life activity affected by her impairments. *Poindexter v. Atchison, Topeka, and Santa Fe Rwy. Co.*, 168 F.3d 1228, 1230, 1232 (10th Cir.

---

[3]  The parties agree that the elements for proving a violation of the ADA and the Rehabilitation Act ("Rehab Act") are the same, except that an element of the Rehab Act is that the entity receives federal funding.   That element is not disputed, and thus, the analysis regarding both Acts is the same.

1999).  The United States Supreme Court defines a "substantial" impairment as one "that prevents or severely restricts [an] individual from doing activities that are of central importance to most people's daily lives" and that is "permanent or long term."  *Toyota Motor Mfg., Inc. v. Williams,* 534 U.S. 184, 198  (2002) (citation omitted).   The court must strictly interpret the term "substantial" to "create a demanding standard for qualifying as disabled." *Id.* at 197.   The ADA regulations describe "substantially limited" as "[u]nable to perform a major life activity that the average person in the general population can perform;" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general  population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(I)-(ii) (2001).

    Factors to be considered are: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii).  An impairment's effects are assessed on a case-by-case basis.  *Holt,* 433 F.3d at 766.  On summary judgment, the ultimate question is whether the evidence presented could allow a jury to conclude the limitations "amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a [] disability." *Berry v. T-Mobile USA, Inc*. 490 F.3d 1211, 1216  (10th Cir. 2007); *Toyota,* 534 U.S. at 202.

    As mentioned above, just as Plaintiff's alleged impairments have varied at different times in this litigation, so too have the alleged major life activities that have been impacted.  First, in her Memorandum in Support of Motion for Partial Summary Judgment, found at docket # 70, she

claims that "unlike many ADA/Rehab cases, there is really no dispute that Solomon was disabled. In fact, part of the hiring process required her to show that she was disabled." Mem. in Supp. at 3. She claims that her heart condition substantially limited her ability to breath, perform manual tasks, walk, and otherwise function normally due to the chest pains resulting from her heart disability. *Id*. To support this claim, she cites generally to the 100-plus page settlement demand letter and attachments, sent to an insurance carrier by her attorney after her automobile accident in 1992. Assuming that this letter constitutes admissible evidence (which it likely does not), Plaintiff has failed to direct the court to any particular language that supports her claim. Indeed, the letter, drafted ten years prior to her hire, states nothing about any current limitations in any major life activity.

>In addition, Plaintiff cites to her own affidavit in which she states that:
>
>As a result of my heart conditions, I experienced recurring, severe chest pains from the time of my heart attack until well after my termination by Defendant Pioneer Adult Rehabilitation Center ("PARC"). The chest pains were so severe that in addition to the sharp, immobilizing pain I felt, I also experienced shortness of breath, weakness, dizziness, disorientation, and profuse sweating. At times, I could not walk and had to sit or lie down to rest.

Affidavit of Donna Solomon, attached as Exhibit K to Pl.'s Mem. in Supp. She also states that "[A]fter my heart attack, hospitalization, and heart surgery in October and November 2002, I continued to do my work at PARC, although at times the chest pains made it difficult to do so." *Id*. ¶ 4. She describes having gone to the Emergency Room at Davis Hospital on January 19, 2003 because the pains became excessive. *Id*. ¶5. She argues in her memorandum that her disability is "congenital and permanent," *see* Mem. in Supp. at 5, but she cites no evidence to support that statement.

>Even assuming that all of this self-serving, uncorroborated testimony is true, Ms.

Solomon provides no detail about how often she experienced these chest pains or how long the resulting breathing difficulties, dizziness, disorientation, or sweating would last. At times, Ms. Solomon implies that these "attacks" occurred on only one or two occasions between October 2002 and April 2003. Coupled with Plaintiff's lack of detail about the nature, severity, and expected duration of her alleged problems, is the undisputed fact that after her heart ablation procedure, her physician released her to return to work with no restrictions. Further, upon further evaluation for her chest pains, no physician has discovered any objective evidence of continued problems related to WPW Syndrome.

Accordingly, the court finds that Plaintiff has failed to create a genuine issue of material fact about whether she is substantially limited in a major life activity based on her heart condition.

Subsequently, in Plaintiff's Supplemental Memorandum in Support of Motion for Summary Judgment, found at docket # 122, within the section entitled, "Supplemental Undisputed Material Facts," she altered the major life activities that she claimed were affected. At this point in the litigation, she claims that the major life activities of "thinking and caring for herself" were substantially limited. *See* Supp'l Mem. in Supp. at 3.[4] She provides no explanation about how these functions are affected or about the severity or the duration of these alleged limitations. Later in the brief, citing to the same Settlement Demand Letter, she states that due to her brain injury, "she suffers from memory loss and a loss of 'executive function'

---

[4] With no elaboration about these alleged limitations, Plaintiff simply cites "SOL 110-131, attached hereto as Supp. Exhibit A." The court assumes that Plaintiff intended to cite Supp. Exhibit E, which contains Bates Numbers 110-131. This document is the Settlement Demand Letter dated January 15, 1992. Not only is it from approximately 10 years prior to the time period at issue, but it was drafted by an attorney attempting to settle an automobile accident case, and it does nothing to establish Plaintiff's current limitations regarding her alleged brain injury.

(defined as "the ability to organize, plan and follow though with a plan)." Therefore, with no further explanation, she claims, "as a matter of law, her brain injury substantially impaired numerous life activities."

In her Reply Memorandum, found at docket # 148, Plaintiff continues to focus on her brain injury, claiming still that it affected several major life functions, including thinking and caring for herself.   She argues that PARC's contention that her evidence is insufficient is specious "given that the documentation discusses several doctor[s'] impressions of Ms. Solomon's loss of memory, attention and concentration, as well as her loss of "executive function" and personality changes." Reply Mem. at iii.   She claims that the documents also set forth her "poor performance on standardized tests administered by the doctors, and anecdotal evidence such as her forgetting to pick up her son from basketball practice."  As noted, above, however, this Settlement Demand Letter is insufficient to create an issue of disputed fact about her limitations in major life activities.

Also in her Reply Memorandum, she claims that PARC's own assessment of Ms. Solomon indicates that she had a brain injury which kept her from obtaining and holding a job in the competitive workplace.  See Reply Mem. at vi (citing to Competitive Employment Statements attached to Ms. Solomon's Initial Mem. In Supp. of Partial Summ. J. at Exhibit P). Again, however, this constitutes scant evidence due to the purpose for which this evaluation was done–for JWOD purposes.

In order to secure federal funding, PARC must hire disabled individuals to constitute at least 75% of its work force.  While the individual who completed the form at issue, a rehabilitation case worker at PARC, indicated that Plaintiff "is not capable of obtaining and

holding a job in a competitive work environment at this time," this is insufficient, by itself, to create a genuine issue of material fact.   Plaintiff makes no attempt to demonstrate that her alleged brain injury substantially limits the major life activity of working, as it is analyzed under the ADA.   In an ADA claim where working constitutes a major life activity, a plaintiff must demonstrate that she is unable to perform either a class of jobs or a broad range of jobs in various classes.  *Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1134 (10th Cir.2003) (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491-92  (1999)).   No such showing has been made here.

In addition, the PARC form focuses on limitations that Plaintiff has not mentioned elsewhere in her lawsuit.  It states that her primary disabilities are "closed head injury/alcohol abuse/depression."  The form states that "the following characteristics have impacted the individual's productivity: Because of Donna's multiple disabilities she struggles with remembering things and has mood swings that also cause her great anxiety.  She also suffers with severe headaches that can also cause her to be forgetful and affects her ability to work.  All these factors affect her overall productivity."  This document, created by a rehabilitation worker at PARC for JWOD purposes is simply insufficient under the ADA to create a genuine issue of material fact.

Plaintiff's overall contention that because she was hired as "disabled" for JWOD purposes,  she must be considered "disabled" for ADA purposes is simply incorrect.   The term "disabled" under the ADA is a term of art, and the ADA definition must be met for one to be found disabled.  Plaintiff, in this case, has failed to create a disputed fact about whether her alleged impairments substantially limit a major life activity, and therefore, she has failed to create

12

a triable fact about whether she is disabled under the ADA.

    *2.*    *Plaintiff Has Not Demonstrated That She Is Otherwise Disabled Under the ADA*

The ADA defines disability as either (1) a physical or mental impairment that substantially limits one or more of an individual's major life activities, 42 U.S.C. § 12102(2)(A); (2) a record of such an impairment, 42 U.S.C. § 12102(2)(B); or (3) being regarded as having such an impairment, 42 U.S.C. § 12102(2)(c).  Plaintiff claims that she is disabled under all three definitions.  Having found that Plaintiff has not created a triable issue concerning whether she has a physical or mental impairment that substantially limits one or more of her major life activities, the court must also evaluate the other two definitions.

Equal Employment Opportunity Commission regulations present three different ways in which an individual may satisfy the meaning of "regarded as having a disability": (1) the individual may have an impairment that is not substantially limiting but is perceived by the defendant as constituting a substantially limiting impairment; (2) the individual may have an impairment that is substantially limiting only because of the attitudes of others toward the impairment; or (3) the individual may have no impairment at all but is regarded by the defendant as having a substantially limiting impairment.  29 C.F.R. § 1630.2( *l* ).  In addition, a claimant may be deemed to have a "record" of disability either by having a history of substantial limitation of a major life activity or by having been misclassified as having such an impairment. 29 C.F.R. § 1630.2(k).  *See Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1218-19 (10th Cir. 2007).

Plaintiff has failed to set forth any evidence to create a genuine issue of material fact about any of these alternative definitions.

B.  **PLAINTIFF HAS FAILED TO CREATE A DISPUTED ISSUE AS TO WHETHER SHE WAS TERMINATED DUE TO HER ALLEGED DISABILITY**

Plaintiff has not established a triable fact regarding whether she was terminated based on her alleged disability. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004). "An employee cannot state a cause of action for disability discrimination when her employer terminated her for reasons unrelated to a disability." *Id.* Although Plaintiff has presented evidence that she informed Ms. Hebert–her immediate supervisor–about her heart problems on March 31, 2003 and her doctor appointment on April 2, 2003, there is no dispute that Ms. Hebert had nothing to do with Plaintiff's termination on April 3 or 4, 2003.  According to Rodney Rose, the HR director, Barbara Bloomfield brought the LWOP violation to his attention, and after verifying that Plaintiff had exceeded the sixteen-hour limit of LWOP hours, he took the information to Robert Daniels, who approved the termination.  *See* Depo. of Rodney Rose, attached as Ex. G to Plaintiff's Mem. in Supp.  Plaintiff has provided no evidence to create a triable issue on this point.  Thus, it is undisputed that the individual who terminated Plaintiff for violating the attendance policy had no knowledge of the reason for her absence.

In addition, while Plaintiff disputes how her LWOP hours were calculated, there is no dispute that, according to PARC's records, Plaintiff took LWOP that exceeded the maximum allowed under the attendance policy.  Thus, Plaintiff has failed to create a genuine issue of fact regarding the reason for her termination.

C.  **PLAINTIFF HAS FAILED TO CREATE A DISPUTED ISSUE AS TO WHETHER SHE REASONABLY ASKED FOR AN ACCOMMODATION**

Plaintiff bears the initial burden of initiating an interactive process with her employer by proposing an accommodation and showing that the accommodation was objectively reasonable.

*Wells v. Shalala*, 228 F.3d 1137, 1145 (10th Cir. 2000).  Although Plaintiff has argued that she was severely disabled, she never requested accommodation when she was hired.  The only alleged request for accommodation was when she asked to attend the cardiologist appointment on April 2, 2003.  Given the context in which the request was made, the court finds that no reasonable jury could find that Plaintiff had asked for an accommodation for a disability.

Not every request for assistance or for permission to ignore the rules can be construed as a request for reasonable accommodation of a disability.  While it is clear that an employee need not use the magic words, "reasonable accommodation," it is just as clear that an employer cannot be omniscient.  Plaintiff has not provided any evidence whatsoever that she told anyone in management that she could not understand the management policy or that she otherwise had trouble understanding instructions.  Other than to tell her immediate supervisor about her generalized chest pain (on an unspecified number of occasions) and about her doctor appointment on April 2, and arguably she made a general comment to Rodney Pratt that she would need time to go to doctor appointments, this court cannot find that Plaintiff has created a genuine issue of fact regarding whether PARC failed to accommodate her.

D.    **PLAINTIFF'S RELIANCE ON HER SUPERVISOR'S APPROVAL WAS NOT REASONABLE**

Plaintiff argues that PARC should be estopped from terminating her based on the violation of the attendance policy because Plaintiff's supervisor approved her leave.  Plaintiff's reliance on her supervisor's approval of her leave was not reasonable under the circumstances.  It is undisputed that  PARC explained the new policy to all employees and explained that their immediate supervisors could not calculate their leave balances for them.  Although Plaintiff disputes that she was ever informed that she could fill out a form and submit the form to Human

Resources ("HR") to obtain her LWOP balance, it is undisputed that Plaintiff signed a statement indicating that she had been advised of the new policy and it is undisputed that the bottom of every "Leave Request" form (which Plaintiff was required to complete to take leave) states, " Compliance with PARC's SCA attendance policy is the sole responsibility of the employee. Supervisor approval of vacation and/or leave without pay does not constitute authorization to use leave not available under PARC's vacation and/or attendance policy." Accordingly, the court finds no merit to Plaintiff's estoppel argument.

## II.  MOTION TO STRIKE PLAINTIFF'S PURPORTED DEPOSITION CORRECTIONS

After Plaintiff's deposition, and ten days after Defendant filed its Motion for Summary Judgment and an Opposition to Plaintiff's Motion for Partial Summary Judgment, Plaintiff went through her deposition and made substantive corrections to better support her new theory that because of her closed-head injury, she was incapable of understanding the new attendance policy and therefore should have been able to rely on her immediate supervisor's approval, despite PARC's express statement to the contrary.

Defendant has moved to strike all the substantive corrections.  It was improper for Plaintiff to substantively change her deposition testimony to conform to her newly argued theory of disability.  However, even considering Plaintiff's altered testimony, Defendant is still entitled to summary judgment.

## III.  MOTION TO STRIKE AFFIDAVIT OF LAURIE HEBERT

On the day of Ms. Hebert's deposition, Plaintiff's counsel handed to Defendant's counsel an affidavit signed by Ms. Hebert.  Defendant then used the affidavit to question Ms. Hebert during the deposition.  Plaintiff, however, has continued to rely on Hebert's affidavit rather than

on her deposition testimony. Defendant contends that it is full of hearsay and assertions that lack foundation. While it is puzzling that Plaintiff would continue to rely on an affidavit after a deposition has been taken, the court finds it immaterial because Defendant is still entitled to summary judgment even without striking the affidavit.

## IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [docket # 119] is GRANTED, and Plaintiff's Motion for Partial Summary Judgment [docket # 69], as later supplemented, is DENIED.   Defendant's Motion to Strike Plaintiff's Deposition Corrections [docket # 137]  is MOOT, and Defendant's Motion to Strike Affidavit of Laurie Hebert [docket # 149] is MOOT.   This case is now DISMISSED.

DATED this 21st day of December, 2007.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge